**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 CR 275-21 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| RICKY BLANCA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

We are also guided by the overarching principle that common sense and experience always have a role to play in drawing inferences and must not be ignored.

*United States v Montoya De Hernandez*, 473 U.S. 531, 542 (1985)

We defer to a district court's credibility findings made during a... hearing unless they are clearly erroneous... Indeed, we will uphold the district court's choice of whom to believe... because the trial court is in the best position to make that judgment... 'We do not second-guess [a court's] credibility determinations because he or she has had the best opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record.'

*United States v. Dean*, 550 F.3d 626, 630 (7th Cir. 2008)[1]

There is presently pending an indictment against Mr. Ricky Blanca, charging him with three counts of mail fraud in violation of 18 U.S.C. § 1341 and insurance fraud in violation of 18 U.S.C. § 1343. Mr. James Mills is also charged as a defendant. [Dkt. #1]. The Government has filed an *Ex*

---

[1] *See also Vargas-Harrison v. Racine Unified School District*, 272 F.3d 964, 971 (7th Cir. 2021)("Categorical judgments based on experience and common sense play an important role in all areas of law.").

*Parte* Emergency Motion for Issuance of an Arrest Warrant [Dkt. #476], seeking to have Mr. Blanca's bond revoked and a warrant for his arrest issued. [*See also* Dkt. #477, Order of Judge Tharp]. The government's two page Motion states that Mr. Blanca was released on electronic monitoring and an unsecured $50,000 cash bond in case 22 CR 275-21, which charged Mr. Blanca with three counts of mail fraud in violation of 18 U.S.C. § 1341.1. Two months later, Mr. Blanca's conditions of release were modified, and he was no longer subject to electronic monitoring. *See* [Dkt. #244-245]. The defendant's Motion for Modification of Bond was unopposed by the government. [Dkt. #244].

On November 3, 2023, the government contends that it learned from Mr. Mills that Mr. Blanca had allegedly threatened him twice: the first time in September 2023, a few days before Labor Day, when, at a traffic light near Orland Square Mall, Mr. Blanca allegedly drove up next to Mr. Mills and, according to the government, "verbally threatened Mills." That claim was supported not only by Mr. Mills but by his son who also testified at the hearing and claimed he was in the car with his father at the time of the claimed threat. Mr. Mills also claimed that on October 26 or 27, 2023, he received a threatening telephone call from Mr. Blanca, during which Mr. Blanca made the following threat: "next time I see you, you won't be so lucky next time." The government's *ex parte* emergency motion also alleged that Mr. Blanca had previously attempted to kill Mr. Mills by shooting him in an unrelated event for which he was briefly charged in the Circuit Court of Cook County in September 2020 – but apparently not prosecuted – because Mr. Mills told the state officials that he wanted to drop the case. Significantly, Mills also conceded that during the course of the state court proceedings he lied to both to the state court judge and to the Assistant States Attorney handling the case in order to get them to dismiss the case. Those admitted/claimed lies, of

2

course, bore on his credibility in this case.[2]

At the evidentiary hearing on the government's Motion in the instant case on 11/15/23, Mr. Mills testified and conceded that the threatening telephone call he claimed to have received from Mr. Blanca did not appear on Mr. Mills' internal phone log. Indeed, it was conceded that there was no record on Mr. Mills' phone of any call from Mr. Blanca. Mr. Mills could not explain or account for this singular omission. Nor, curiously, did the *government* attempt to explain that absence or why it had done nothing to try to obtain the records from the phone company that could have proved that the claimed call had, in fact, been made as Mr. Mills contended – if, in fact, such a call had been made.

Nor curiously, despite the alleged threats from Mr. Blanca, was Mr. Mills able to offer any credible or reasonable explanation as to why he did not immediately call his lawyer after the alleged threats. The best he could say was that he thought that he would be seeing his lawyer in a week or so, and he would tell him at that time about the alleged death threats, even though he conceded he had the number immediately at hand. Why he would have waited a week to have relayed information that his life had just been threatened was never explained. I find his contention that he waited a week to tell his lawyer of the claimed threats not believable.[3] It should be noted that Mr. Mills' attorney

---

[2] Mr. Mills testified that the state court shooting case was dismissed at his request and that the decision to dismiss was based upon his "admitted" lies to the judge and prosecutor. In essence, Mr. Mills is saying that he should be believed now notwithstanding his admitted lies to two state court officials whom he successfully gulled. But those prior claimed lies bear upon Mr. Mills' current credibility.

[3] His admitted failure to contact his lawyer stands in marked contrast to his claimed behavior after the alleged "threats." After the first claimed threat at the stop light he said he immediately went home he was so frightened, rather than continuing his planned shopping trip. He claimed that after he received the telephone threat, he was so frightened that he checked to be sure all the windows and doors were locked. Yet, oddly, he did not take the few seconds it would have taken to call his lawyer whose number he admitted having.

3

was never called as a witness by the government to support any claim that Mr. Mills *ever* told him (either in person or by phone) that he had supposedly been threatened twice by Mr. Blanca. That failure to call a uniquely available witness leaves Mr. Mills' contention unsupported and improbable. Improbable testimony need not be credited. *United States v. Davis*, 2023 WL 4575978, *3 (7th Cir. 2023); *United States v. Johnson*, 729 F.3d 710, 715 (7th Cir. 2013)*; United States v. Nobles*, 69 F.3d 172, 179-180 (7th Cir. 1995). Indeed, the claim that Mr. Mills did not immediately call his lawyer in the face of having received two separate death threats was "patently improbable" and his claim that he waited at least a week each time to tell his lawyer is contrary to accepted canons of behavior. *Fuery v. City of Chicago*, 900 F.3d 450, 459 (7th Cir. 2018). In my judgment, Mr. Mills' claim is so "implausible on its face that a reasonable fact finder would not credit it," and I do not. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

The notion that one would wait a week or so after receiving two death threats without taking a few seconds to make a phone call to one's own lawyer whose number was known and immediately accessible to Mr. Mills defies human experience and logic. Even more improbable is the contention that even though the claimed threatening call to Mr. Mill's phone from Mr. Blanca somehow did not appear in the phone's registry of received calls, it was in fact made. I find that testimony not believable. *United States v. Terry*, 572 F.3d 430, 435 (7th Cir. 2009).

Finally, at the hearing on the government's motion for issuance of an arrest warrant, Mr. Mills conceded that he had previously lied not only to a state court prosecutor, but to a state court judge as well in connection with the previous charge against Mr. Blanca that he had shot Mr. Mills. This admitted mendacity was certainly admissible in determining Mr. Mills' credibility in connection with his present claim that he had twice been threatened by Mr. Blanca. What we have

said suffices to explain why the government's Motion for Issuance of an Arrest Warrant is denied. Mr. Mills, in my judgment, was not a sufficiently credible witness to warrant granting the relief presently sought by the government.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 11/17/23